IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

H.R.B., *et al.*,                                    &ast;

   Plaintiffs,                        &ast;

     v.                     &ast;          Civil No. TJS-24-762

ST. MARY'S COUNTY BOARD OF                 &ast;
EDUCATION,
                                           &ast;
   Defendant.
    &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

**MEMORANDUM OPINION**

This case is brought by H.R.B., a minor, by her stepfather J.B., and mother D.R.B. (collectively "Plaintiffs"). H.R.B. is a tenth grader who was a student of St. Mary's County Public Schools ("SMCPS" or "Defendant") from kindergarten through ninth grade. Plaintiffs allege that SMCPS violated the Individuals with Disabilities Education Act ("IDEA"), arguing that H.R.B. was denied a Free and Appropriate Public Education ("FAPE") by SMCPS. Pursuant to the dispute resolution provisions in the IDEA, Plaintiffs first brought their claims before an Administrative Law Judge ("ALJ") in a due process hearing. The ALJ held that H.R.B. was not denied a FAPE, and Plaintiffs filed this case.

Pending before the Court are the Motion for Summary Judgment filed by Plaintiffs ("Plaintiffs' Motion") (ECF No. 25) and the Cross-Motion for Summary Judgment filed by Defendant ("Defendant's Cross-Motion") (ECF No. 28).[1] Having considered the submissions of the parties (ECF Nos. 25, 28, 31, 32 & 35), I find that a hearing is unnecessary. *See* Loc. R.

---

[1] In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have the undersigned conduct all further proceedings in this case, including trial and entry of final judgment, and conduct all post-judgment proceedings, with direct review by the Fourth Circuit Court of Appeals, if an appeal is filed. ECF No. 13.

105.6. For the following reasons, Plaintiffs' Motion will be **DENIED** and Defendant's Cross-Motion will be **GRANTED**.

## I.     Free and Appropriate Public Education ("FAPE")

The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free and appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). States must, in exchange for federal funding, implement policies and procedures to ensure that students with disabilities have the opportunity to receive a FAPE. *Id.* § 1412(a). A FAPE "provides meaningful access to the educational process." *Bd. of Educ. of the Hendrick Hudson Sent. Sch. Dist. v. Rowley*, 458 U.S. 176, 192 (1982). Where appropriate, a FAPE must "'include special education and related services' that are provided 'without charge' to the child's family and that 'meet the standards of the State educational agency.'" *T.B., Jr. by & though T.B. Sr. v. Prince George's Cnty. Bd. Of Educ.*, 897 F.3d 566, 571 (4th Cir. 2018) (citing 20 U.S.C. § 1401(9)). Special education services must be provided "in the least restrictive environment," meaning:

> To the maximum extent appropriate, children with disabilities . . . are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

20 U.S.C. § 1412(a)(5)(A). The nature or severity of a student's disabilities may mean that a FAPE requires placing a student in a private school with full funding by the public school district. *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369 (1985). But the IDEA "does not require that a school district provide a disabled child with the best possible education."

*Rowley*, 458 at 192. Rather, the question is whether the child with a disability receives "some educational benefit." *Id.* at 200. A FAPE generally "entails an education reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *G.M. by E.P. v. Barnes*, 114 F.4th 323, 329 (4th Cir. 2024) (internal quotations omitted).

To ensure access to a FAPE, schools must prepare and implement an Individual Education Program ("IEP") for each child with a qualifying disability. 20 U.S.C. § 1401(9). An IEP must address, among other things, "the student's current educational status, annual educational goals, the need for special educational services or other aids necessary to help meet those goals, and whether the child may be educated in regular school classroom with non-disabled students." *M.L. v. Smith*, No. PX 16-3236, 2018 WL 3756722 (D. Md. Aug. 7, 2018); *see* 20 U.S.C. § 1414(d)(1)(A)(i)). The IEP has been described by the Supreme Court as "the centerpiece of the statute's education delivery system for disabled children." *Honig v. Doe*, 484 U.S. 305, 311 (1988).

If parents believe that the educational agency has not made a FAPE available to their child, they may place the child in a private school and seek tuition reimbursement from the state. However, reimbursement may only be provided if (1) "the court or hearing officer finds that the agency had not made a [FAPE] available to the child in a timely manner prior to that enrollment" and (2) the education provided to the child at the private school is "appropriate to meet the child's needs." *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 371-71 (1985).

The IDEA also contains "procedural safeguards to insure the full participation of the parents and proper resolution of substantive disagreements." *Sch. Comm. of Burlington*, 471 U.S. at 368. When a procedural violation of the IDEA is alleged, the Fourth Circuit has held that

3

"[u]nless an ALJ determines that a given procedural violation denied the child a FAPE, she may only order compliance with the IDEA's procedural requirements and cannot grant other forms of relief, such as private placement or compensatory education." *R.F. v. Cecil Cty. Pub. Schs.*, 919 F.3d 237, 248 (4th Cir. 2019).

> Under § 1415(f)(3)(E)(ii)(II), an ALJ must answer each of the following in the affirmative to find that a procedural violation of the parental rights provisions of the IDEA constitutes a violation of the IDEA: (1) whether the plaintiffs 'alleg[ed] a procedural violation,' (2) whether that violation 'significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a [FAPE] to the parents' child,' and (3) whether the child 'did not receive a [FAPE] as a result.

*Id.* (citing 20 U.S.C. § 1415(f)(3)(E).

The IDEA also "establishes formal administrative procedures for resolving disputes between parents and schools concerning the provision of a FAPE. *Fry v. Napoleon Cnty. Sch.*, 580 U.S. 154, 154 (2017). Under Maryland law, aggrieved parents may request a due process hearing before the Maryland Office of Administrative Hearings. Md. Code Regs. Tit. 14A, § 05.01.15(C)(1). After exhausting administrative remedies, parents may appeal the administrative ruling in federal or state court. Md. Code, Educ. § 8-413(h); Handicapped Children's Protection Act of 1986, 20 U.S.C. § 1415(*l*) (requiring exhaustion of administrative remedies before resorting to the courts under the IDEA). "The parents bear the burden of proof both in the administrative hearing and before the state or federal court." *M.G. v. McKnight*, F. Supp. 3d 202, 207 (D. Md. 2023).

## II.    Background

### A.    Factual Background

Unless otherwise noted, the following facts are drawn from the ALJ's Findings of Fact from his decision dated November 21, 2023,[2] and they are not in dispute.

H.R.B. attended the Chesapeake Public Charter School ("Chesapeake"), which is part of SMCPS, from kindergarten to eighth grade. In the summer of 2021, prior to H.R.B.'s eighth grade year, H.R.B's mother and stepfather ("Parents") enrolled H.R.B. in private tutoring. On September 1, 2021, H.R.B. underwent assessments through the private tutor that revealed that she was performing significantly below grade level: H.R.B.'s Phonological Awareness score put her approximately at a first-grade level; her reading efficiency was in the 8th percentile; her sight word efficiency was in the 23rd percentile; her phonemic decoding efficiency was in the 3rd percentile, and her word identification, spelling, fundamental literacy ability index, and sound-symbol knowledge were in the first percentile or lower. AR 18. Consequently, the Parents gave consent for an initial assessment for special education services. *Id.* SMCPS began conducting assessments of H.R.B. in October 2021. AR at 19-22.[3] H.R.B. performed in the extremely low range for processing speed, below average for phonological awareness, and below average for ability to attend to uninteresting tasks. *Id.* She showed elevated scores in learning problems and executive functioning categories, and her cognitive regulation and working memory scores were clinically significant. *Id.* Based on these tests, SMCPS concluded that H.R.B. met the criteria for an ADHD diagnosis. *Id.* Additional tests revealed she had poor reading accuracy, fluency, and

---

[2] OAH No. MSDE-STMY-OT-23-09054. The Decision is contained in the administrative record. All references to the administrative record will be made to "AR." The administrative record is on file with the Court.

[3] H.R.B.'s scores that fell within low average ranges or higher will not be noted.

comprehension, and below average performance in addition, subtraction, multiplication, and division. *Id.*

In November 2022, Chesapeake found H.R.B. eligible for special education services, classifying her disability as "Other Health Impairments" ("OHI") due to her ADHD. *Id.* at 19. On December 8, 2021, SMCPS drafted an IEP that had goals in reading fluency, written language mechanics, math calculation skills, and behavioral self-management. *Id.* at 22. At the Parents' request, reading fluency and reading phonics goals were added to a revised IEP that was sent to the Parents on December 10, 2021. *Id.* An IEP team meeting was held on January 14, 2022. The Parents requested additional time to review the IEP with H.R.B.'s educational advocate, Dr. James, so the IEP team reconvened on February 4, 2022. *Id.* at 22-23. The Parents rejected the proposed IEP because they disagreed on the eligibility classification as OHI. *Id.* at 23. The Parents believed that H.R.B. should be classified as "Specific Learning Disability" ("SLD") instead. The Parents did not provide consent for implementation of an IEP during the 2021-2022 school year. *Id.*

In February and March of 2022, Parents had neuropsychologist Dr. Vincent Culotta perform an evaluation for H.R.B for learning disabilities. *Id.* Before the evaluation was complete, it was discovered that H.R.B.'s biological father sexually abused H.R.B. and her friends, and provided them alcohol and marijuana. *Id.* H.R.B.'s biological father was arrested for those offenses in March 2022. Dr. Culotta incorporated this revelation into his assessment, analysis, and recommendations. Dr. Culotta found that H.R.B. has significant learning disability and Post-Traumatic Stress Disorder ("PTSD"). *Id.* at 23-25. Dr. Culotta wrote a report that included those diagnoses and recommendations for her success in school:

- placement in a small, highly structured classroom for core academic instruction;

6

- access throughout her day to a science-based reading program that is multi-sensory, syntactic, systematic, hierarchically organized, and phonics based;
- personalized instruction in mathematics to support the Student's fluency, problem solving, and calculation skills;
- personalized instruction in written expression to support essay composition skills;
- access to psychological services in school and coordination with the Student's private therapist; and
- access to a flash pass.

*Id.* at 26. Dr. Culotta also recommended referral for psychiatric evaluation, cognitive-behavioral therapy, close monitoring for safety, extended time for standardized testing, and participation in extracurricular activities. *Id.* at 26-27. The Parents submitted a redacted version of Dr. Culotta's report to the school in April 2022. The redacted report omitted the PTSD diagnosis, Dr. Culotta's behavioral observations, and the Emotional/Personality Features section of his report. *Id.* at 27.

On May 26, 2022, the IEP team held a meeting to review Dr. Culotta's report. SMCPS changed H.R.B.'s eligibility status to include both OHI and SLD. *Id.* They also added special instruction, accommodations, and additional classroom supports to the IEP and a math-problem solving goal. *Id.* The new proposed IEP contained 16 supplementary aids, services, program modifications, and supports, as well as new goals for reading phonics, written language mechanics, math calculation, reading fluency, self-management, math problem solving, and 7.5 hours per week outside of general education. *Id.* at 28-30. It was provided to the Parents on June 3, 2022. *Id.* Another IEP meeting was convened on June 9, 2022. The Parents requested several changes, including less rigorous goals. SMCPS did not agree to the changes. SMCPS sent a proposed IEP to the Parents after the meeting, which the Parents refused to approve. *Id.*

During the summer of 2022, H.R.B. attended a five-week program at the Gow School in New York. *Id.* In June and July 2022, the Parents applied to private schools for H.R.B. for the 2022-2023 school year. H.R.B. was accepted to the Forman School ("Forman") in Connecticut, a

"coeducational, college-preparatory boarding and day school for students with learning differences in grades nine through twelve." *Id.* In August 2022, Dr. Culotta wrote a letter to the IEP team, requesting additional goals and services, including those to address social/emotional challenges resulting from her trauma. *Id.* On August 18, 2022, the Parents provided Dr. Culotta's full, unredacted report to SMCPS. *Id.*

On August 24, 2022, the team convened an IEP meeting for the 2022-2023 school year. SMCPS expanded the goals in H.R.B.'s IEP, including adding social/emotional goals. *Id.* at 33. By the time of this meeting, the Parents already knew that H.R.B. would be attending Forman for 2022-2023. *Id.* The IEP team did not complete the new IEP at the August 24, 2022 IEP meeting, and SMCPS requested to reconvene. *Id.* SMCPS also requested that H.R.B. undergo additional testing, which the Parents refused. *Id.* The Parents informed SMCPS that H.R.B. would attend Forman for the 2022-2023 school year and sent a letter requesting that SMCPS place H.R.B. at Forman and fund her tuition. *Id.*

In September 2022, the IEP team amended the draft IEP to include additional supports and goals. *Id.* at 34. The team attempted to reconvene on September 19, 2022, and again on October 18, 2022, but both of those meetings were suspended (the first meeting was suspended because the school psychologist was not available; the second meeting was suspended because SMCPS needed to review documents from Forman provided by the Parents). *Id.* at 36. At the October 2022 meeting, the Parents agreed to permit SMCPS to speak with Forman staff and H.R.B.'s therapist to aid in developing H.R.B.'s social/emotional goals. *Id.* at 37.

On January 31, 2023, another IEP meeting was convened. At that meeting, the team agreed to several revisions at Parents' request. *Id.* at 39. SMCPS informed Parents that they believed that H.R.B.'s needs could be met in a comprehensive high school with specialized

instruction for reading, math, English, science, and social studies, as well as one hour per week of counseling services. *Id.* at 41. The Parents wanted the IEP to "state that all [of H.R.B.'s] classes will be outside of general education," but refused to discuss her placement at that meeting. *Id.* at 41. A revised proposed IEP was sent after that meeting, which included further accommodations and additional specialized instruction for H.R.B., but included some time in the general education setting.

In February and March 2023, H.R.B. took a six-week medical leave from Forman for treatment at a partial hospitalization program at Calvert Hospital. *Id.* at 46. In April 2023, H.R.B. admitted to Forman staff that she was using marijuana and alcohol almost daily, and she subsequently began substance abuse treatment. *Id.* at 52-53.

On May 4, 2023, the team convened again to discuss H.R.B.'s IEP. SMCPS's chairperson, Ms. O'Dell, reiterated that they believed H.R.B.'s needs could be met at a comprehensive high school. *Id.* at 46-47. Parents' representative stated that H.R.B. "needs a residential facility to meet her needs." *Id.* However, discussion of H.R.B.'s placement ended when Parents' representative refused to hear the IEP team members' opinions on H.R.B.'s placement. *Id.*

### B.    Procedural History

The Parents filed a Request for Due Process on April 3, 2023, and an Amended Request on May 12, 2023. ECF No. 1 ¶ 76. The Parents argued that SMCPS did not offer H.R.B. a FAPE. Specifically, the Parents asserted that SMCPS (1) predetermined H.R.B.'s placement; (2) failed to respond to or follow the input of IEP team members acting on H.R.B.'s behalf; and (3) failed to have an IEP in place at the beginning of the 2022-2023 school year. They further asserted that the IEP that SMCPS proposed did not provide H.R.B. with a FAPE because her needs could only

be met if all of her instruction took place in special education settings, and SMCPS did not consider H.R.B.'s progress at Forman.

A Due Process Hearing was held over eight days in September and October of 2023 before the ALJ AR at 2.

> After H.R.B.'s case-in-chief, SMCPS moved for judgment on the grounds that: (1) the Parents failed to consent to the receipt of special education services and this meant that SMPCS had no obligation to provide FAPE; and (2) [H.R.B.] failed to show that placement at Forman was appropriate.

AR at 62.

The ALJ issued his decision on November 21, 2023, where he ruled on both SMCPS's Motion for Judgment and H.R.B.'s claims. The ALJ denied SMCPS's motion because "the courts have broad authority to grant appropriate relief including reimbursement for the cost of private special education," and the Parents "did not have to first consent to and receive special education services under an IEP they considered inappropriate before filing a due process claim." AR at 65.

The ALJ found that H.R.B. was not denied a FAPE. He held that SMCPS did not predetermine H.R.B.'s placement, but rather listened to and considered the Parents' input. AR at 70-77. He found that SMCPS's failure to have an IEP in place for the 2022-2023 school year did not deprive H.R.B. of educational benefit because the Parents would have rejected any IEP that did not include a private placement for H.R.B. at Forman. AR at 77-80. He also found that H.R.B. failed to prove that she required special education classes outside of her core classes, and that SMCPS did consider H.R.B.'s progress at Forman in developing the IEP. AR at 80-97.

III.    **Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict for the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Yet the "mere existence of a scintilla of evidence in support of the [opposing party's] position" cannot defeat a motion for summary judgment. *Id.* at 252.

The facts themselves, and the inferences to be drawn from those facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). A party may not rest on the mere allegations or denials of its pleading but must cite "particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "When faced with cross motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotations and citations omitted).

When reviewing cross-motions for summary judgment under the IDEA, courts conduct a "modified de novo review," *G.M.*, 114 F.4th at 333, giving the state administrative proceedings "due weight." *M.M. ex rel. DM v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 530-531 (4th Cir.

2002). "Due weight" here means that "regularly made" factual determinations by the ALJ "are entitled to be considered *prima facie* correct." *Doyle v. Arlington Cnty. Sch. Bd.*, 963 F.2d 100, 105 (4th Cir. 1991). If a district court is not going to follow "regularly made" factual determinations by the ALJ, it "is required to explain why it does not." *Id.*

"When assessing whether the findings were regularly made, our Court focuses on the process through which the findings were made, not the results of that process." *G.M.*, 114 F.4th at 334 (internal quotations and citations omitted). Courts have found that findings were regularly made where the state administrative proceedings involved "a proper hearing, allowing the parents and the School Board to present evidence and make arguments, and the hearing officer by all indications resolved the factual questions in the normal way, without flipping a coin, throwing a dart, or otherwise abdicating his responsibility to decide the case." *Id.* (quoting *J.P. ex rel. Peterson v. Cnty Sch. Bd. of Hanover Cnty.*, 516 F.3d 524, 259 (4th Cir. 2008)). If the administrative officer "departed 'far from the accepted fact-process,' the fact-finding is not 'regularly made.'" *S.S. v. Bd. of Ed. of Harford Cnty*, 498 F. Supp. 3d 761, 775 (D. Md. 2020) (quoting *Sumter Cnty Sch. Dist. 17 v. Heffernan ex rel. T.H.*, 642 F.3d 478, 485 (4th Cir. 2011)). Although the ALJ's conclusions of fact may be entitled to be considered *prima facie* correct, a district court is not required to "follow the administrative officer's findings and legal conclusions." *Id.* at 776 (citing *Springer v. Fairfax Cnty. Sch. Bd.*, 134 F.3d 659, 663 n. * (4th Cir. 1998) (declining to give weight to administrative officer's findings that were "cursory and conclusory")). "After giving the administrative fact-findings such due weight, if any, the district court is then free to decide the case on the preponderance of the evidence, as required by the statute." *Doyle*, 963 F.2d at 105.

The IDEA "leaves the substance and details of [the education for each child with a disability] to state and local school officials." *Barnett by Barnett v. Fairfax Cnty. Sch. Bd.*, 927 F.2d 146, 152 (4th Cir. 1991). Thus, when reviewing an IEP, the ALJ and the Court must give "great deference to the views of the school system rather than those of even the most well-meaning parent." *A.B. ex rel. D.B. v. Lawson*, 354 F.3d 315, 328 (4th Cir. 2004). Parents, therefore, face a difficult task when appealing an ALJ's decision under the IEP, for they carry the burden of showing that their child was denied a FAPE, while the Court must give "due weight" to the regularly made factual findings of the ALJ and "great deference" to the judgment of the school system.

## IV.    Discussion

Count I alleges that SMCPS failed to provide H.R.B. a FAPE, in violation of the IDEA and Maryland law. ECF No. 1 at 20-21. Count II alleges that the ALJ failed to order SMCPS to place and fund H.R.B. in an appropriate program and placement, in violation of the IDEA and Maryland Law. *Id.* at 21. Count III alleges that the ALJ failed to apply correct legal standards, in violation of Plaintiffs' due process rights under the IDEA and Maryland law. *Id.*

Only Count I states a claim that this Court may consider. This is appropriate for two reasons: First, under the IDEA, "the district court cannot affirm, reverse, vacate, or remand the state hearing officer's decision." *G.M.*, 114 F.4th at 330. Rather, after applying its independent judgment with deference to the ALJ's "regularly made" factual findings, the district court may "order[] substantive or procedural relief as necessary." *Id.* (citing *Doyle*, 953 F.2d at 105). Second, awarding relief against a party not named as a defendant would be improper. Counts II and III are based upon the conduct of the ALJ rather than the Defendant, and the relief sought related to those counts (to "[i]ssue injunctive relief, vacating the Decision of the Administrative

13

Law Judge") is beyond the power of the Court. SMCPS is entitled to summary judgment as to Counts II and III. *See* ECF No. 1 at 21-22.

The parties' arguments for summary judgment as to Count I are discussed in detail below.

> **A.    The ALJ's factual determinations are entitled to be considered *prima facie* correct.**

Plaintiffs cite precedent from outside of the Fourth Circuit to assert that the ALJ's decision "merits little deference" because, according to Plaintiffs, the ALJ "ignored a wealth of evidence and failed to appropriately consider all issues in the case." ECF No. 25-1 at 12. *See Teague Indep. Sch. Dist. v. Todd L.*, 999 F.3d 127, 131 (5th Cir. 1993); *M.C. by & through M.N. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1194-95 (9th Cir 2017). The Court will not rely on out-of-Circuit cases where, as here, there is developed Fourth Circuit precedent. The Court must give due weight to the ALJ's determinations by treating his findings of fact as *prima facie* correct, so long as they were regularly made. In determining whether decisions were "regularly made," courts in the Fourth Circuit focus on the process in which the ALJ's decisions were rendered, focusing particularly on whether both parties were given the opportunity to present evidence and make arguments. *Doyle*, 953 at 105; *Bouabid v. Charlotte-Mecklenburg Schs. Bd. of Educ.*, 62 F.4th 851, 857 (4th Cir. 2023).

There is nothing in the ALJ's ninety-nine (99) page opinion suggesting the ALJ's findings were "cursory" or that the ALJ abdicated his responsibility in making his factual determinations. *D.B. v. Craven Cnty. Bd. of Educ.*, 210 F.3d 360 (4th Cir. 2000) (table) (declining to give deference to "cursory" and "conclusory" hearing officer's findings); *J.P.*, 516 F.3d at 259-60). The ALJ held hearings over eight days. ECF No. 28-1 at 2. The ALJ considered

73 exhibits submitted by the Parents, 202 exhibits submitted by SMCPS, and two joint exhibits, as well as testimony from four witnesses on behalf of the Parents and five witnesses on behalf of SMCPS. *Id.* at 16. *See A.B.*, 354 F.3d at 330 n. 9 (noting that where "the ALJ conducted a formal hearing and considered witness testimony and multiple exhibits," his factual determinations were entitled to deference). ALJs are "in a far superior position to evaluate such witness testimony" and other evidence compared with the Court which reviews a "cold record." *Id.* Plaintiffs have not identified any procedural defects in the manner the hearing was conducted or demonstrated that the ALJ abdicated his duty. Therefore, the Court will give due deference to the ALJ's factual determinations and consider them to be *prima facie* correct.

As noted above, however, the Court considers the ALJ's opinion as a whole under a modified de novo standard of review. While the ALJ's findings of fact will be treated as *prima facie* correct, his findings of law are not entitled to deference.

> **B.      The proposed IEP did not deny H.R.B. a FAPE.**

In support of Count I, Plaintiffs argue that (1) the placement in the proposed IEP denied H.R.B. a FAPE; (2) SMCPS's failure to have an IEP in place at the start of the 2022-2023 school year denied H.R.B. a FAPE; and (3) the proposed placement was predetermined. ECF No. 25-1. Plaintiffs argue that in reaching his decision, the ALJ ignored H.R.B.'s unique needs, failed to recognize predetermination of H.R.B.'s placement, and failed to recognize that the proposed placement denied H.R.B. a FAPE. *Id.*

> **1. The proposed placement did not deny H.R.B. a FAPE**

The first question is whether the IEP proposed in January 2023 was reasonably designed to provide H.R.B. a FAPE. The January 2023 proposed IEP was the first completed draft

produced after any discussion of placement with the IEP team, and therefore it is the one that the Parties, the ALJ, and now this Court, focus on.

"Any review of an IEP must appreciate that the question is whether the IEP is *reasonable*, not whether the court regards it as ideal." *Endres F. ex rel. Joseph F. v. Douglas Cnty Sch. Dist. RE-1*, 137 S. Ct. 998, 999 (2017). In *Rowley*, the Supreme Court held that an IEP must provide a "basic floor of opportunity." *Rowley*, 485 U.S. at 201. The Court determined that the requirements of the IDEA are satisfied when an IEP provides access to an educational program that confers "some educational benefit" upon the student with a disability. *Id.* at 200.

During the hearing, Plaintiffs presented testimony of one of H.R.B.'s Parents; Plaintiff's educational advocate, Dr James; and H.R.B's neuropsychologist, Dr. Culotta, to establish that H.R.B.'s needs could not be met in a general education environment. AR at 91. However, the ALJ found their testimony unconvincing. *Id.* He noted that the Parent, who based his opinion that H.R.B.'s needs could not be met at a comprehensive high school on his "experience" at the Gow School (the summer program H.R.B. enrolled in in the Summer of 2022), was unable to support that opinion with any details, specific problems, or documentary evidence. *Id.* at 92. The ALJ found that Dr. James's concerns were too vague and failed to explain why a full day of special education was necessary. *Id.*

Dr. Culotta testified that he did not believe that H.R.B. would be "capable of making progress in a general education setting given the accumulative impact of her low reading, math and writing skills and the overlay of physical trauma." *Id.* at 93 (citing Dr. Culotta's testimony). He also testified that he believed "a general education setting given its size, complexity, peer relationships and community understanding of her trauma would really inhibit her ability to make appropriate progress." *Id.* The ALJ chose to give no weight to Dr. Culotta's testimony for

16

two reasons. First, the ALJ found that Dr. Culotta's opinion was "not specific enough to be credited as establishing a need for special education classes for non-core academic areas." *Id.* Second, the ALJ noted that Dr. Culotta's "very extensive report shared with SMCPS in August 2022" did not contain a recommendation for special education in all classes, but only for "core academic instruction." *Id.* at 93-94. The ALJ elaborated,

> [B]ecause Dr. Culotta did not include a recommendation for a full-time special education program in either his April 2022 report or July 2022 letter, his testimony at the hearing constitutes a post-hoc attempt to edit his report from spring 2022 and the July 2022 letter to reflect the reality that the Student was at Forman. Therefore, I give Dr. Culotta's testimony on the necessity for a full-time special education program no weight.

*Id.* at 94.

Plaintiffs now argue that the ALJ failed to take into account H.R.B.'s unique needs. Plaintiffs note that H.R.B. experienced "severe educational disability impacting her across all academic areas" yet was not identified by the school system as a student with special education needs until eighth grade. ECF No. 25-1 at 15. Plaintiffs allege that the ALJ failed to consider factors that make H.R.B.'s situation particularly distinctive, namely that H.R.B. was the victim of sexual abuse perpetrated by her biological father and the PTSD she suffered as a result. *Id.* H.R.B.'s PTSD has caused her to experience "episodes of impulsivity, self-destructive thoughts, anxiety, and periods where she is unable to sustain and maintain progress in some of her courses," *Id.* at 16 (quoting Dr. Culotta's testimony), as well as "thoughts of suicide and self harm" and "difficulty with her peers." *Id.* Plaintiffs argue that the school district and the ALJ ignored the opinions of experts and assert that there was no evidence that the school system's proposal was appropriate. *Id.* at 16. Plaintiffs characterize the "failure of the ALJ to even

acknowledge the seriousness and significance of the events that led to H.R.B.'s PTSD diagnosis and their impact on her" as "shocking." ECF No. 25-1 at 14-15.

An ALJ is entitled to deference in making determinations of witness credibility. "[H]earing officers are not required to provide an explanation for 'accepting the testimony of one witness over that of another.'" *G.M.*, 114 F.4th at 334 (quoting *Bouabid*, 62 F.4th at 859). Moreover, "[h]earing officers may discount any witness's testimony so long as their reasons for doing so are not arbitrary." *Id.* And an ALJ "may assess credibility based simply upon an intuitive impression of candor." *Bouabid*, 62 F. 4th at 859. The ALJ's decision to discount the testimony of Parent, Dr. James, and Dr. Culotta was not arbitrary, and he provided reasons for doing so.

Plaintiffs also point to the lack of expert testimony to show that the ALJ erred in rejecting the Parents' evidence. However, the burden was on the Parents to prove that the IEP failed to provide a FAPE. The ALJ found that the Parents did not meet their burden. SMCPS had no obligation to present expert testimony to support its arguments.

Turning to the substance of the IEP, the Court agrees with the ALJ finding that the IEP proposed by SMCPS in January 2023 was reasonably calculated to provide H.R.B. with a FAPE. The January 2023 proposed IEP included specialized instruction in her core academic classes (17 hours and 40 minutes per week, or 53.35% of the day) and general education classes for non-core subjects (such as art and physical education). *Id.* The IEP also included 20 supplementary aids, services, program modifications, and supports, as well as additional accommodations. *Id.* at 86-88. The Parents' objections to the IEP are directed at the proposed services and not the goals or supplemental aids that it identified. *Id.* at 88. The Parents believe that a FAPE for H.R.B. would

require her to receive specialized instruction outside of the general education setting for all of her classes.

"The goals contained in an IEP are the standard against which any proposed placement is measured." *Wagner v. Bd. of Educ. of Montgomery Cnty.*, 340 F. Supp.2d 603, 612 (D. Md. 2002). The Parents agreed to the IEP goals, and the school system developed services designed to meet those goals. AR at 88-89. The reasons articulated by Parents for pursuing private placement, such as a recent school shooting and concerns related to real or perceived social and emotional repercussions of community knowledge of the incident involving H.R.B.'s birth father, were not included in the goals of the IEP. *Id.* at 79. Still, SMCPS's chairperson, Ms. O'Dell, attempted to address those concerns by increasing therapy services that would be offered in the IEP before H.R.B.'s Parent put an abrupt end to the discussion. *Id.* at 74. Moreover, all of the recommendations from Dr. Culotta's full report were incorporated into the services offered in the January 2023 proposed IEP. *Id.* at 88. It was not until July 2022, when the Parents were already applying to private schools, that Dr. Culotta added a recommendation for specialized instruction in all of H.R.B.'s classes. As noted above, the Court defers to the ALJ's determination that Dr. Culotta and Dr. James's later recommendations for private placement were not credible or convincing.

SMCPS had the dual obligation under the IDEA to ensure that H.R.B. was educated alongside her non-disabled peers to the maximum extent appropriate. As the agencies tasked by Congress to determine the substance and details of an IEP, deference is owed to state and local education agencies, and not to parents, in their assessment of a child's educational needs. *See Barnett*, 927 F.2d at 152; *A.B.*, 354 F.3d at 328; *N.P. v. Maxwell*, 711 F. App'x 713, 717 (4th Cir.

2017) ("[I]t is a longstanding policy in IDEA cases to afford great deference to the judgment of education professionals.") (internal quotations omitted).

The January IEP, which proposed substantial accommodations and services, including allocating a majority of H.R.B.'s time for specialized instruction, was reasonably calculated to "confer some educational benefit" on H.R.B.  *Rowley*, 458 U.S. at 200. It is not the role of the Court to "substitute its own notions of sound educational policy for those of local school authorities." *Id*. at 206. As the ALJ found Dr. Culotta's and Dr. James' testimony to lack any credible reason that H.R.B. required specialized instruction for non-core classes, Plaintiffs have not shown that the placement in the January 2023 denied H.R.B. a FAPE.

### 2.    The IEP was not predetermined.

Plaintiffs argue that SMCPS predetermined H.R.B.'s proposed placement at the January 31, 2023 and May 4, 2023 IEP meetings. ECF No. 1 Para. 64 & 74.

The IDEA requires that "each public agency . . . ensure that . . . [t]he child's placement . . . [i]s based on the child's IEP." 34 C.F.R. § 300.116(b)(2). Predetermination occurs when a child's placement is decided before the IEP is developed. *Spielberg by Spielberg v. Henrico Cnty. Pub. Sch*., 853 F.2d 256 (4th Cir. 1988). Furthermore, "if the school system has already fully made up its mind before the parents ever get involved, it has denied them the opportunity for any meaningful input." *Hanson ex rel. Hanson v. Smith*, 212 F. Supp. 2d 474, 486 (D. Md. 2002). However, while "school officials must come to the IEP table with an open mind . . .  they should not come to the IEP table with a blank mind" *Doyle v. Arlington Cnty. Sch. Bd*., 806 F. Supp. 1253, 1262 (E.D. Va. 1992), *aff'd*, 39 F.3d 1176 (4th Cir. 1994); *see also A.B. v. McKnight*, No. BAH-22-03295, 2025 WL 90648 at *10 (D. Md. Jan. 14, 2025). Preparing ahead

20

of time and coming to an IEP meeting with their opinions about a student's placement does not amount to predetermination. *See Hanson*, 212 F. Supp. 2d at 486.

Plaintiffs dispute the ALJ's finding that the IEP team—including the Parents—discussed H.R.B.'s placement at the January 31, 2023 meeting, and that the Parents' counsel put a halt to such discussion. ECF No. 25-1 at 20. The Parents argue that SMCPS's representative, Ms. O'Dell, presented H.R.B.'s "predetermined" placement at the meeting and Parents "made it clear that any discussion of placement would be premature." *Id.* The question of whether or not the team discussed H.R.B.'s placement at the January 31, 2023 meeting or who was responsible for preventing such discussion is a question of fact. For the reasons discussed above, the Court must defer to the ALJ's findings of fact. The Court will not reexamine testimony and substitute its judgment for that of the ALJ, who had the benefit of observing live testimony and examination of the witnesses to make credibility determinations.

The Parents had an additional opportunity to discuss H.R.B.'s placement with the team at the May 2023 IEP meeting. By that time, discussion of placement was not premature because the team had a draft IEP before it, and they did not discuss changing the IEP at the May 2023 meeting. AR at 76. The update from Forman, which included the revelation that H.R.B. was struggling at school, supported a conclusion that a placement there was not necessarily the right fit for H.R.B. because she had too much autonomy. *Id.* at 76. And Ms. O'Dell responded to input from the Parents regarding H.R.B.'s placement by noting that H.R.B.'s struggles could be addressed at SMCPS's proposed placement through therapy. *Id.* Parents once again deprived themselves of the opportunity to participate in the decision-making process when their counsel told the team that he did not want to hear their opinions on H.R.B.'s placement. *Id.* at 74.

Because the Parents had the opportunity to discuss H.R.B.'s placement before SMCPS made any decision regarding placement, H.R.B.'s placement was not predetermined.

Lack of predetermination of the IEP is also demonstrated by record evidence in that SMCPS repeatedly revised its proposed IEP in response to input from Parents and their representatives. *Id.* at 70 (noting that SMCPS amended the IEP eight times to incorporate feedback from the Parents).

Furthermore, predetermination is a procedural violation of the IDEA. An ALJ may not grant relief such as private placement or recompensation based on a procedural violation unless he finds, *inter alia*, that the procedural violation resulted in the student being denied a FAPE. *See R.F.*, 929 F.3d at 248. As discussed above, SMCPS's IEP did not deny H.R.B. a FAPE. Therefore, even if SMCPS did predetermine H.R.B.'s placement, the only relief available would be to order SMCPS to comply with the procedural requirements of the IDEA. *E.S. by B.S. v. Smith*, 767 Fed. Appx. 538 (4th Cir. 2019) (memorandum opinion) (affirming a district court holding that, although the school district predetermined a child's placement, the child was not denied a FAPE and thus the Plaintiffs were not entitled to the relief sought).

The evidence shows that SMCPS repeatedly incorporated feedback from the Parents into the IEP that they proposed for H.R.B. Although SMCPS did not ultimately agree with the Parents on H.R.B.'s appropriate placement, the Parents had the opportunity to participate in the decision-making process. Therefore, H.R.B.'s placement was not predetermined.

> **3.    SMCPS's failure to have an IEP in place at the start of the 2022-2023 school year did not deny H.R.B. a FAPE and reimbursement is not appropriate.**

Plaintiffs also argue that SMCPS violated the IDEA by failing to have an IEP in place at the start of the 2022-2023 school year. ECF No. 25-1 at 24-30. It is not contested that SMCPS

did not have an IEP in place at the start of the school year. Because this is a procedural violation, the question is whether this violation deprived H.R.B. of a FAPE. Stated differently, did SMCPS's failure to implement an IEP by the start of the school year caused H.R.B. a loss of educational opportunity? *Burke County Bd. of Educ. v. Denton*, 895 F.2d 973, 982 (4th Cir.1990).

Courts will not find that a local agency's delay in implementing an IEP causes a loss of educational opportunity where the parents' dilatory or bad faith actions prevented timely implementation. *Sanger v. Montgomery Cnty Bd. of Educ.*, 916 F. Supp. 518, 527 (D. Md. 1996) (holding that the parents could not recover against the school district for failing to implement a proposed IEP after they themselves blocked the implementation). Courts also will not find that the delay causes a loss of educational opportunity if it is clear that the parents would not have used the IEP had it been in place at the beginning of the school year. *M.K. v. Starr*, 3185 F. Supp 3d 79, 697 (D. Md. 2016) (holding that the IEP would not have been utilized, based on the parents' decision to withdraw their child from the public school and their lack of participation in the IEP process); *T.B.*, 897 F.3d at 573 (holding that the IEP would not have been utilized, based on the fact that the child refused to attend school).

Here, the evidence shows that the Parents would not have accepted any IEP that did not include placement at a private school. This is clear for three reasons. First, Parents had already enrolled H.R.B. at Forman when the team convened for the August 2022 IEP meeting and then made clear that they did not intend to send H.R.B. to the public school. Second, the Parents withheld necessary information from SMCPS, delaying the IEP process until after the school year began. And third, the Parents refused to engage in discussion of placement for H.R.B. at a comprehensive high school.

23

The Parents began applying to private schools for H.R.B. in July 2022. AR at 7. She was accepted to Forman on August 18, 2024, prior to the August 24, 2022 IEP meeting. *Id.* The Parents informed SMCPS at that meeting that H.R.B. would be attending Forman for the 2022-2023 school year, and their representative stated that H.R.B.'s needs could not be met at a comprehensive high school. *Id.* at 7-8. Of course, without more, the Parents' decision to unilaterally pursue private placement would not be sufficient to bar recovery. *Justin G. ex rel. Gene R. v. Bd. of Educ. of Montgomery Cnty.*, 148 F. Supp.2d 576 (D. Md. 2001) ("absent a showing of bad faith, parents taking an adversarial or uncooperative stance in advocating for their child's right to a FAPE does not justify a complete denial of reimbursement."); *Sarah v. Weast*, 111 F. Supp.2d 685, 697 n. 6 (D. Md. 2000) ("Parents may be committed to private school for their child whatever the school authorities may propose . . . So long as they make a bona fide effort to develop an IEP for the child and otherwise follow appropriate procedural requirements, they can take their chances, place their child in private school, and attempt to convince and ALJ and/or court later on that the offering of the school authorities does not measure up a [FAPE] for the child.").

But the Parents' lawyer told SMCPS that Parents would not send H.R.B. to the public school because of concerns over, *inter alia*, H.R.B.'s trauma due to an incident in the community (i.e., H.R.B.'s father's abuse of H.R.B. and her friends), a peer committing suicide due to that incident, the upcoming trial relating to that incident, and a recent school shooting. AR at 79. As the ALJ pointed out, these comments "do not sound like the statements of an individual who is willing to consider placement at SMCPS" and they are unrelated to the content of the IEP. The Parents "took their chances" on a private placement, but the ALJ found that SMCPS's proposed IEP provided H.R.B. with a FAPE. This is analogous to *M.M. v. Sch. Dist. of Greenville Cnty.*,

where the Court found that the child was not denied a FAPE because it was clear that the parents would not have accepted a timely IEP that did not include a private placement. 303 F.3d at 534-35.

Furthermore, Parents did not provide SMCPS with Dr. Culotta's unredacted report until August 17, 2023. Withholding critical documents has been found to demonstrate bad faith on the part of the parents. In *S.M. v. Weast*, the Court found that the parents did not "cooperate in the joint enterprise that the IEP is supposed to be" because, *inter alia*, they withheld documents and data from a private evaluation of the child "until well after the decision had been made to remove [the child] from public school." 240 F. Supp. 2d at 436.

In subsequent IEP meetings, any time that the subject of placement arose, the Parents refused to consider SMCPS's assertions that H.R.B.'s needs could be met at a comprehensive high school, and they did not permit the discussions to continue. As described earlier, there were two separate IEP meetings where SMCPS attempted to discuss H.R.B.'s placement. The Parents entirely refused to engage in the discussion at both meetings. Plaintiffs rely on *M.G. v. McKnight*, which held that it was improper for an ALJ to conclude that parents would have rejected a timely IEP based on Parents' subsequent rejection of an IEP that lacked private placement. 653 F. Supp.3d at 216. In that case, the court emphasized the parents' interest in keeping their child at the private school rather than disrupting his education by transferring schools mid-semester. This case is readily distinguishable. When the IEP was proposed in January 2023, the Parents could have moved H.R.B. for the second semester with relatively minimal disruption to her education.[4] Moreover, H.R.B. was struggling at Forman, and had to

---

[4] Courts have held that, where the school district fails to have an adequate IEP in place at the start of the school year and parents are forced to enroll in private placement to secure a

attend a six-week hospitalization program in February and March. AR at 52-53. Removing her from Forman around the time of the March 2023 IEP meeting would not have disrupted her education any more than the treatment program. Also, the Parents do not allege that disrupting H.R.B.'s education by moving her mid-year was a concern that they had or raised to SMCPS.

The Parents contend they initially withheld the full report from SMCPS to protect H.R.B.'s privacy. However, at the same time, the Parents provided the full, unredacted report to the private schools they applied to, prior to providing the full report to SMCPS. AR at 32. This suggests that the Parents were more interested in ensuring that a private school could meet H.R.B.'s needs than ensuring that SMCPS could develop an IEP that would meet her needs. The Parents finally provided the full report to SMCPS on August 17, 2024 (at which point, H.R.B. had been denied admission to all of the schools Parents had applied to). *Id.* As the Parents must have expected, disclosure of the full report resulted in the need to significantly revise the IEP's goals and services. The Parents' delay in providing the full report to SMCPS directly caused the IEP drafting process to extend into the school year. And the Parents refused to make H.R.B. available in the Fall of 2022 for further evaluation by SMCPS because she was attending Forman in Connecticut. *Id.* at 33.

Plaintiffs argue that the delay in proposing the IEP was not entirely attributable to the Parents' withholding of critical documents because SMCPS did not propose an IEP until January 2023, five months after the unredacted report was provided. ECF No. 25-1 at 28. However, if SMCPS had taken four months to develop an IEP from the time that the Parents received the report in April, it would have been developed by September 2022, around the start of the 2022-

---

FAPE, it is appropriate to fund the private placement through the end of the semester because transferring mid-term is disruptive to the student's education. *See, e.g., Kitchelt ex rel. Kitchelt v. Weast*, 341 F. Supp.2d 553, 557 (D. Md. 2004).

2023 school year. In *M.M.,* the Fourth Circuit found that where the Parents caused delays in the IEP process and then unilaterally enrolled their child in a private school, the school system's failure to have an IEP in place for that year did not deny the child a FAPE. *M.M.*, 303 F.3d. at 533. The same rationale applies in this case.

Plaintiffs also argue that "even without Dr. Culotta's full report and the information about the abuse, H.R.B. was a student, who was about to walk into high school and could not write a sentence and was reading at the primary level." ECF No. 25-1 at 29 (internal quotations omitted). Plaintiffs continue,

> even without the information as to H.R.B.'s PTSD, it should have been crystal clear to the IEP team that she required significantly more than was being belatedly offered. That school system's failure to recognize this and plan for it before the start of the school year, was a denial fo [sic] FAPE.

*Id.* at 30. But this argument is belied by the evidence. SMCPS *did* offer a proposed IEP to the Parents in June 2022. *Id.* at 31. Parents denied that IEP because they wanted an IEP that included less rigorous goals. *Id.* at 28-30. If Parents were truly concerned about H.R.B. entering the public school without an IEP in place, they could have approved the June IEP and moved forward with additional modifications during the 2021-2022 school year. Instead, they rejected the proposed IEP while continuing to withhold Dr. Culotta's full report for another two months, only to produce it to the IEP team one week before the August 2022 meeting. *See M.M.*, 303 F. 3d at 535 (finding that the child was not denied a FAPE where the parents rejected an IEP, disengaged from the IEP process, and enrolled their child in a private school, and emphasizing that the proposed IEP only required finalization).

Under the totality of the record, the ALJ correctly concluded that the Parents never intended to accept an IEP for the 2022-2023 school year unless it included a private placement.

The Parents would not have used any IEP that placed H.R.B. at a comprehensive high school for the 2022-2023 school year, even if one had been in place. Therefore, the Parents cannot now recover reimbursement for the private placement that they unilaterally pursued.

## V.    Conclusion

The January 2023 proposed IEP did not deny H.R.B. a FAPE. The IEP was not predetermined. And SMCPS's failure to have an IEP in place at the start of the 2022-2023 school year did not deprive H.R.B. of a FAPE. For these reasons, SMCPS did not fail to offer H.R.B. a FAPE, and Defendant is entitled to summary judgment as to Count I.

Plaintiffs' Motion for Summary Judgment (ECF No. 25) is **DENIED** and Defendant's Cross-Motion for Summary Judgment (ECF No. 28) is **GRANTED**. A separate Order follows.


May 30, 2025                                                /s/
Date                                               Timothy J. Sullivan
                                                   Chief United States Magistrate Judge